The judgment of the district court is affirmed.

St. Louis & San Francisco Railway Company
v. Arthur Sullivan.

No. 171.

1. EVIDENCE—*Irrelevant—Waiver of Objections.* Where testimony which is possibly irrelevant to his case is offered by the plaintiff and is admitted over defendant's objection, and where the defendant afterwards fails to object to the introduction of similar evidence and, in its own behalf, introduces testimony to the same effect, its objection is thereby waived.

2. INSTRUCTIONS—*Inapplicable—Giving, not Reversible Error, When.* Where the trial court gives to the jury an inapplicable instruction, and thereafter gives such clear and proper instructions that the jurors as reasonable men ought not to have been influenced by the inapplicable instruction, and where nothing appears from which it can be reasonably inferred that the jury were misled thereby, *held*, that the giving of such instruction was not reversible error.

3. ——— *Refusal to Give—not Error, When.* No error appears in the refusal of the court to give the two instructions set forth in the assignment of errors, it appearing that one was sufficiently embodied in an instruction given by the court, the other not being applicable to the case.

4. CASE-MADE—*Amendments on Settlement—Sufficient Certificate.* Where the case-made shows that it was served within the time granted by the court, and where the certificate of the trial judge shows that said case-made was duly presented for settlement, counsel for both parties being present and no objection being made to the settlement, and such certificate makes no mention of amendments to the case-made, *held*, that under the facts stated, the absence of a statement as to amendments furnishes no ground for dismissal of the proceedings in error; also, *held*, that it is not necessary for the clerk of the trial court to certify to the correctness of the case-made, and that the attestation of the clerk and the seal of the court, after the trial judge has settled and signed the case-made, are sufficient. (*Muscott v. Hanna,* 26 Kan. 770.)

Error from Sedgwick court of common pleas ; JACOB M. BALDERSTON, judge.    Opinion filed May 14, 1897. Affirmed.

*J. W. Gleed,* and *C. Hamilton,* for plaintiff in error. *Bentley & Hatfield,* for defendant in error.

The opinion of the court was delivered by

MILTON, J. :  Arthur Sullivan, as plaintiff, sued the St. Louis & San Francisco Railway Company in the court of common pleas of Sedgwick county, alleging that his crops on the northwest quarter of section 28, township 25, range 1 east, in Sedgwick county, had been damaged in the years 1890 and 1891 by the wrongful acts of defendant company in cutting down and destroying the banks and levees of a natural watercourse known as the middle branch of Chisholm creek, in close proximity to plaintiff's land  on the south, and also in cutting down and destroying a certain levee on the north line of plaintiff's land,

whereby the water was diverted from said water-course to and upon plaintiff's land.

The allegation of the petition as to the cause and manner of the damage in the year 1891 is as follows :

"That on or about the 20th day of June, 1891, and at divers other times, days and dates which the plaintiff cannot give with more particularity, but during said June 20th, the said defendant, by its agents, servants, and employees, negligently, carelessly and wrongfully cut down, excavated and destroyed the banks and levees of a certain creek or watercourse known as Chisholm creek, in close proximity to plaintiff's land, and wrongfully and carelessly cut down and destroyed a certain levee along the north line of said plaintiff's land, and wrongfully kept the same cut down and destroyed during said year, whereby and by reason of which a large volume of water from said creek was turned upon and did overflow the said plaintiff's land, which injured and destroyed the following property of plaintiff, to wit : . . ."

The allegations as to the damage in the year 1890 are substantially the same as the foregoing. Then follows a detailed statement of the damages plaintiff claimed to have suffered, and the petition is verified. Defendant filed a verified answer denying that plaintiff had suffered any damages resulting from defendant's wrongful act or omission, and averring that if plaintiff had sustained any damages at all the amount was not so great as alleged in his petition ; to which plaintiff filed a reply, consisting of a general denial of the averments of the answer. The case was tried before a jury, beginning October 12, 1891, both parties appearing by their attorneys.

On the trial, the plaintiff introduced evidence to prove that the defendant company had cut down the north bank of Chisholm creek, a natural watercourse, at a point where a bridge on defendant's railroad known

as bridge No. 288 crossed said creek, which point was about eighty rods south of the southwest corner of said plaintiff's land, and from said cut had made and maintained a ditch along its right of way from the creek north to plaintiff's land ; that in 1890 and 1891, when the creek was swollen from heavy rains, water had flowed through this ditch along the railroad company's right of way, which runs due north along the west line of the east half of section 28, and had flooded plaintiff's farm and destroyed his crops. Plaintiff also introduced evidence to show the value of the crops destroyed and the extent of his damage.

Defendant introduced evidence tending to show that it had not cut or maintained a ditch from the north bank of Chisholm creek to plaintiff's farm, and that plaintiff's damage had resulted from the accumulation of surface-water upon his land and from extraordinary floods: The amount claimed by plaintiff was $1314.20. The jury returned a verdict in his favor for $200. At the request of the defendant, certain special questions of fact were submitted to the jury, and the findings were accordingly made and returned.

A motion for a new trial upon general grounds was duly filed and by the court overruled.

The railroad company brings the case here on a petition in error, which has been transferred by the supreme court to this court.

In this court the defendant in error has moved to dismiss the appeal and petition in error, mainly on the ground that the certificate of the trial judge is defective in that it is silent as to amendments. Oral argument has been made by counsel for both parties on this motion.

We observe that the case-made was served within the time granted by the court, as appears from the jour-

nal entry of judgment, and the service was duly acknowledged by the attorneys for plaintiff below ; that there is in the case-made itself a statement that it "contains all the records, pleadings, all the evidence, motions, objections, rulings, exceptions, instructions asked, instructions given, and all of the exhibits introduced as evidence, and all other proceedings had at the trial of said cause." Service of the case was made and acknowledged thereon by counsel for defendant in error.

The certificate of the trial judge states that the case-made was, on December 31, 1891, (which was more than ten days after the service thereof,) presented for settlement ; that the plaintiff appeared by his attorneys, and the defendant by its attorneys, followed by the usual formal statements of such a cirtificate, with no mention of amendments.

In addition to this statement, that counsel for plaintiff below were present at the settling of the case-made, counsel for plaintiff in error has filed here an affidavit of Fred. W. Bentley, setting forth that he had sole charge and control of the cause in the court below, and that no amendments to the case-made were ever suggested by Arthur Sullivan or his attorneys of record, Bentley & Bentley ; that said attorneys for plaintiff below were present when the case-made was presented for settlement to the trial judge ; and that they made no objection of any sort and suggested no changes or amendments.

The foregoing we think sufficient to dispose of the objection to the certification of the case-made on the ground stated. (*Russell v. Anthony*, 21 Kan. 450.)

The objection that the clerk of the court ought to certify to the correctness of the case-made is not well taken. The attestation of the clerk and the seal of the court after the trial judge has settled and signed

the case-made are sufficient. (*Muscott v. Hanna*, 26 Kan. 770.) We therefore overrule the motion to dismiss.

Plaintiff makes five assignments of error, which we will now consider.

The answer of defendant below does not contain a general but makes one special denial, as follows :

"The defendant further says, that the injuries, if any, sustained by said plaintiff, were not the result of any wrongful or negligent act or omission on the part of said defendant, its officers, agents, or servants."

And also avers that if plaintiff suffered any damage the amount thereof was not so great as alleged by plaintiff. We think that under this answer evidence as to extraordinary floods could not properly be admitted, and that all such evidence is irrelevant. But its admission matters very little in determining the question here raised, for the reason that the testimony is conflicting on this point, and one of the witnesses for the railway company states that he had known the water in the creek as high prior to 1890 as it was in 1890 and 1891. While there is some conflict in the evidence, we think the verdict is supported by competent and relevant testimony.

The principal grounds of error relate to the admission of certain testimony as to the bridge across Chisholm creek obstructing the flow of water, and the instructions of the court concerning the duty of a railroad company which constructs its road across a natural watercourse. There is no dispute that the land slopes from the north bank of Chisholm creek, at the railroad bridge, to near the northwest corner of Arthur Sullivan's farm, and that the latter point is about six feet lower than the north bank of the creek.

A little ridge lies north of the creek bank at a distance variously stated at from sixty to eighty feet. This ridge was cut through in building the railroad, and is also cut through east of the road-bed, and from this ridge to the southwest corner of Sullivan's land there is a well-defined ditch which has been made by the railroad company. It is practically undisputed that, at the times alleged in 1890 and 1891, the water from Chisholm creek flowed north through this ditch and flooded the Sullivan farm, but the railway company contended on the trial, and now contends, that this water reached the ditch at a point near this ridge through a small depression, or bayou as some witnesses term it, which leads from the creek at a point up stream, east of the bridge.

Plaintiff below introduced as a witness one Charles Thompson, who testified positively that in 1890 and 1891 section men cut the north bank of the creek on the east side of and near bridge No. 228 and took out dirt, making an excavation a foot or more deep, and that in June in both years named water flowed from the creek through the ditch along the east side of the track toward the Sullivan farm, the ditch being very full of water.

It is also shown by the evidence, and is beyond dispute, that heavy rains caused a great amount of surface-water to flow from the northeast and east toward the northwest part of the Sullivan farm, and that Sullivan had constructed what he called a dike along his north line, to prevent this surface water from overflowing his land; and that the dike was cut at the northwest corner of the farm by employees of the railroad company next to the road-bed prior to the flooding of the fields in 1890, and never repaired. A large portion of the water which flooded the Sullivan

farm in 1890 and 1891 seems to have been surface-water which gathered at the northwest corner of the land and spread toward the east and southeast, the northwest part of the tract having a surface nearly level.

Plaintiff below sought to recover damage for the overflow caused by cutting the north dike as well as for that resulting from cutting the bank of the creek.

The court in its instructions to the jury entirely eliminated the question of damage from the flow through the dike. Now the railway company alleges error in the admission, over its objection, of the following testimony for the plaintiff:

" Ques. I want to ask you how deep those timbers of the bridge are below the rails, if you know?" (Defendant objects, as incompetent, irrelevant, and immaterial.) "Plaintiff: We want to show that the bridge acts as a kind of dam there to throw up the water, in connection with the water coming down through the ditches on the north side." (Objection overruled by the court, to which defendant excepts.)

" Q. Mr. Thompson, how deep are the timbers; what is the size of the timbers there, under the rail? A. I cannot state just exactly the size of them.

" Q. Well, about? A. You mean those that run lengthwise under the bridge?

" Q. Yes, what I want to get at is the amount of space that the bridge occupies down toward the bed of the creek. A. Well, there is a piece under there I guess twelve inches wide, and another I think six, and then the rail is on top of those.

" Q. And the ties; have you figured the ties? A. Yes, sir; I believe so.

" Q. How many times have you seen the water running against the top of the bridge? A. Twice.

" Q. When was it? A. Once on the 17th of June, and the next was the 21st.

" Q. Of this year? A. Yes, sir.

" Q. What was the condition of the creek north of

the bridge as to the float wood or trash gathering there?'' (Defendant objects, as incompetent, irrelevant, and immaterial.) ''Court: You may show whether the bridge dammed the water up or not.'' (Defendant excepts to the ruling of the court.) ''A. Well, they kept us pulling; we had to pull the brush off of there.

''Q. Anything else? A. We had to pull the brush and trash away from the bridge.''

We observe that if this testimony were offered for the purpose claimed by counsel for plaintiff in error, that is, to show a further ground of recovery, it was clearly irrelevant, and its admission improper; but it seems from a careful reading of all the testimony that the plaintiff below was at this point seeking to anticipate the defense that the water which flowed north through the ditch had reached the ditch from the ''draw'' or ''bayou'' already referred to, and had not entered the ditch at the bridge, as plaintiff contended. Evidence, then, that the water was flowing against the bridge would tend to prove that the water flowed from the creek at the bridge through the ditch toward the north. For these reasons we are not willing to hold that the admission of this evidence is error.

Again: It appears that plaintiff's witness James Thompson subsequently testified, as to the flood of 1891, that the bridge was all covered with water, but that there was only a little brush in the creek at the bridge; ''there was a few sticks and stuff on top of the bridge when we got there,'' and no objection was offered by defendant thereto.

Further than this, the record discloses that counsel for the railway company brought out on cross-examination of the witness Boyse the following:

''Ques. Was it (the water) over the track? Ans. Not north of the bridge.

" Q.  Just at thè bridge?  A.  Yes, sir.

" Q.  You walked right up to the bridge between the rails?  A.  Yes, sir.

" Q.  Was the water up against the ties?  A.  Yes, sir."

Also, the railway company's own witness Joseph Furman testified on cross-examination as to the high water in 1890 :

" Yes, there was a small stream started right at the bridge when I was there ; the water was just up over the ties, even with the ties on the bridge, when I walked across the bridge."

Also, the company's witness Bowersock was asked by counsel for the company how high the water would have to rise to flow north from the bridge, and answered that he thought it would have to be within about twelve or fourteen inches of the base of the rail.. He was also asked how high the water was with reference to the bottom of the rails, and answered that it was about a foot below the base of the rail on the bridge.    On cross-examination, he stated that the water had been higher before he visited the bridge.

The company's witness Pat Murphy, on his examination in chief, was asked with relation to the high water in June, 1891 :

" Ques.  Was it up over the bridge ?  Ans.  Well, I could not see, the way it rolled, whether it went over the rail or not.

" Q.  How high would the water in the creek be before it would get up out of the banks and run north through the ditches ;  would it get above the railroad bridge, or up even with it ?  A.  It would have to get to the railroad bridge in this way;  there are some boards in there, and there is a kind of an angle there, and when the water struck those boards it kind of struck the boards and rushed north ;  run over them.

" Q.  The creek don't run parallel ?  A.  No, sir.

"Q.  It runs diagonal ?  A.  Yes, sir.

"Q.  And the water strikes against this bank ?  A. Yes, sir ; and that rushes the water down."

We are thus convinced from the whole record that there was no substantial error in the admission of the testimony, as contended by plaintiff in error, and further, that it is in no position to complain.

Plaintiff in error complains of the refusal of the court to instruct the jury as follows :

"The plaintiff cannot recover any damages in this action by reason of the damming of the water at the railway company's bridge over the middle branch of Chisholm creek."

We think it was not error for the court to refuse to give this instruction, in view of the facts developed on the trial, some of which we have hereinbefore set forth.  There was no issue in the case as to damming the stream by the bridge.  The court, in another instruction to the jury, clearly stated the only ground of recovery to be that the plaintiff should prove his damage to have resulted from the cutting and maintaining by the railroad company of a ditch from the north side of the creek at bridge No. 228, so that water ran through the ditch from the north side of the creek and damaged the premises of plaintiff, and there was no real necessity for giving the instruction asked for.

Plaintiff in error strongly insists that the court committed reversible error in giving the following instruction :

"You are further instructed, as a matter of law, that a railroad company which constructs its road across a natural watercourse is bound to make provisions for the discharge of all of the water that may flow through such watercourse."

It is contended that this instruction, which is No.

5, is incorrect as an abstract proposition.   We think it is insufficient as an exposition of the law concerning railroad bridges over natural watercourses, and also that it was improper under the issues in the case.   But we are not, therefore, to reverse the case without further consideration.   The instruction of the court which we have already referred to, and which is numbered 8, is as follows :

"You are instructed that before plaintiff can recover he must prove by the greater weight of evidence that the defendant has since maintained a continuous ditch from the north side of bridge No. 228 along its right of way, so that the water has run through it from within the limits of the bank of the middle branch of the watercourse commonly known as the middle branch of Chisholm creek, so that by reason of said ditch such water has damaged plaintiff's premises."

The ninth and tenth instructions are as follows :

"9.   The jury are instructed that the plaintiff cannot recover damages by reason of any water which has flowed on to his premises by reason of the overflow of the natural banks of the middle branch of Chisholm creek.

"10.   The jury are instructed that the plaintiff cannot recover in this action any damages by reason of any surface-water which has flowed in upon plaintiff's premises from the ditch."

The question for this court to consider, in view of all the foregoing, is whether or not the jury was misled by instruction No. 5, given by the trial court. The answers to the special questions of fact disclose that the jury were careful and considerate in their examination of the testimony.   In answer to question No. 4, they find that three-fifths of plaintiff's entire damage resulted from water flowing onto the farm from the north.   In answer to question No. 5, the

jury find "no rails at the north end of bridge No. 228 are less than a foot above the surface of the ground."

In this connection, we note that the testimony of the railroad company's witness Bowersock shows that the water would have to rise within twelve or fourteen inches of the base of the rail in order to flow north on the east side of the bridge over the bank of the creek.

The jury found in answer to question No. 7 that the railroad company had made a continuous ditch from the north bank of the creek at bridge No. 228 between the cut and the bridge. It thus appears that the jury were satisfied from the evidence that the water would flow north along the east side of the railroad from the creek at the bridge through the ditch which had been cut by the railroad company without regard to the flow of water against the bridge. Since both plaintiff and defendant introduced testimony to show that the water was against the bridge, such fact would only tend to prove that the flow in the ditch was increased rather than lessened as the water rose at the bridge. The effect of the water passing into the ditch would naturally be to lessen the flow under the bridge. We do not find from the answers of the jury that they were giving any consideration to the testimony in regard to the flow of the water against the bridge. It is very clear that proof of the water running against the timbers of the bridge would strengthen the claim of the plaintiff below that it was also flowing north along the railroad from that point. The railroad company was interested in proving that the water overflowed the banks of the creek and we judge that for such reason its counsel introduced testimony as to high water at

the bridge.    The railroad company submitted the following question to the jury :

"Ques. 19.  About what per cent. of the water which flowed north through the cut north of the bridge in question came onto the right of way through the hedge east of and parallel with the track?"

To which the jury answered : "No evidence as to the per cent. of water from that source."  This was asked for the purpose of discovering what the jury found from the evidence as to the surface or overflow water from a point some distance east of the bridge, entering the ditch at or near the "cut."  Complaint is made that this answer of the jury was not sufficient under the evidence.  We have examined the evidence and think that we could make no better answer than the jury have done.

We conclude from an examination of the entire record that the jury was not in any wise misled by the instruction No. 5.  The verdict was for less than one-sixth of the amount claimed, which tends to strengthen this conclusion.

It is also claimed that the court erred in refusing the following instruction asked by the defendant company :

"You are instructed that the banks of the creek are the sides of the ordinary and usual channel."

In the seventh instruction the court told the jury what constituted a natural watercourse, in language which closely follows that used by the supreme court in making such a definition, and in the fifteenth instruction gave a definition which is very complete as to a natural watercourse and its banks, which also adopts the language of our supreme court.  The instructions given completely cover the ground of that asked for by the defendant company.

In the case of the *A. T. & S. Rld. Co. v. Irwin*, 35 Kan. 286, which is cited by counsel for plaintiff in error to show that the court's instruction No. 5 entitled plaintiff in error to reversal of the case at bar, it appears that the court specifically instructed the jury that the plaintiff might recover if the injury was caused by the negligence of the fireman, notwithstanding that the plaintiff had specifically alleged that the injury was caused by the negligence of the engineer. We think this doctrine not applicable in this case. They cite the case of *C. K. & W. Rld. Co. v. Bell*, 1 Kan. App. 71, in which the court instructed the jury that they might find for the plaintiff if they believed the defendant was guilty of negligence in permitting the plaintiff to remain in the car after it had reached its destination, notwithstanding the fact that the allegation in the petition was that the injury was caused by the negligent management of the train of cars, whereby the engine and some of the cars were violently backed into the car in which plaintiff was a passenger. We think this does not apply here. In the case of *A. T. & S. F. Rld. Co. v. Ayers*, 56 Kan. 176, the trial court instructed the jury that it devolved upon the railroad company to show, on proof of the setting out of the fire by defendant's locomotive, not only that the locomotive was properly managed and controlled, but that it was sufficient and in good condition and repair, notwithstanding the averment of the petition was that the defendant company so carelessly managed and controlled its locomotive and train that fire escaped therefrom.

This and the foregoing cases are easily distinguishable from the case at bar. In the three cases cited the court instructed the jury that they might find for the plaintiff upon a ground not alleged in the petition.

In this case the court specifically instructed the jury that they could not find for the plaintiff unless one of the two grounds stated in the petition was proven by the greater weight of the evidence, and that the other ground would not entitle to a recovery.

In the case of *A. T. & S. F. Rld. Co. v. Irwin*, supra, the court says :

"If the evidence indisputably showed that the injury was caused by the negligence of the engineer, and not through any fault of the fireman, we might hold the instruction to be harmless."

In the *City of Wyandotte v. White*, 13 Kan. 191, it is said : "To determine whether an instruction be erroneous it must be considered in reference to the facts in the case, as well as in relation to the other instructions."

The following rule is laid down in *U. P. Rly. Co. v. Milliken*, 8 Kan. 650 :

"The whole charge must be taken together, and oftentimes an incorrect statement of law in one portion is so far explained, limited or qualified by some other that it is evident the jury cannot have been misled."

In the case of *K. C. Ft. S. & G. Rld. Co. v. Hay*, 31 Kan. 179, it is said that the mere fact that an instruction is inapplicable does not compel a reversal, and that the rule as to reversal on account of such instructions obtains only when there is reason to believe that the jury was misled or their attention diverted from the real issues by such inapplicable instructions.

In *Zimmerman v. Knox*, 34 Kan. 252, occurs the following language :

"It is true that the giving of an instruction upon an abstract proposition of law, and which is irrelevant to the issues in the case, is not reversible error, unless

Steinbuchel v. Railway Co.

it may be fairly inferred that the jury were misled thereby."

In the case of *Burton v. Boyd*, 7 Kan. 17, it is said that unless it may be made reasonably to appear that the jury were misled by the giving of an inapplicable instruction the judgment will not be reversed.

As before stated, nothing appears to indicate that the jury was misled or in any wise influenced by the instruction complained of. We conclude that, while the trial court ought not to have given it, the giving thereof does not constitute reversible error.

The last error complained of is the overruling of defendant's motion for a new trial. We think this was not error.

The judgment of the trial court will be affirmed.